UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>FRANK ROLFE )<br>Serve:  Hold for Service )<br>)<br>MHPI V, LLC )<br>Serve:  Hold for Service )<br>)<br>MHPI VII, LLC )<br>Serve:  Hold for Service )<br>)<br>Defendant ) | Cause No.: 4:21-cv-01122<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff State Farm Fire and Casualty Company ("State Farm"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2200 and 2210 and Rule 57 of the Federal Rules of Civil Procedure, states as follows:

1.      State Farm brings this action seeking the interpretation of a personal liability umbrella insurance policy and a declaration of its rights and obligations thereunder with respect to a lawsuit filed against its insured, Frank Rolfe, in the Circuit Court of the Ninth Judicial Circuit, Orange County, Florida, captioned *MHPI V, LLC a Florida limited liability company, and MHPI VII, LLC, a Delaware limited liability company v. Frank Rolfe, an individual*", Case No. 2020-CA-008683-O ("Underlying Lawsuit").

1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff State Farm is and was at all times mentioned herein a corporation incorporated under the laws of the State of Illinois with its principal place of business in the State of Illinois, and therefore a citizen of the State of Illinois, engaged in the business of insurance, and licensed to transact that business in the State of Missouri.

2. Upon reasonable information and belief, Frank Rolfe ("Rolfe") is domiciled in, and therefore a resident of, the State of Missouri.

3. MHPI V, LLC ("Fund 5") is a limited liability company organized and operating under the laws of the State of Florida. Upon reasonable information and belief, all members of Fund 5 are citizens of the State of Florida and/or the State of California. Upon reasonable information and belief, no members of Fund 5 are citizens of Illinois.

4. MHPI VII, LLC ("Fund 7") is a limited liability company organized and operating under the laws of the State of Delaware. Upon reasonable information and belief, all members of Fund 7 are citizens of the State of Florida and/or the State of California. Upon reasonable information and belief, no members of Fund 7 are citizens of Illinois.

5. This case and controversy involves citizens of different states.

6. The insurance policy at issue in this matter has liability limits of $500,000.00.

7. Based on the allegations in the Underlying Lawsuit (but without making any admission as to the merits thereof), the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. This Court has diversity jurisdiction under 28 U.S.C. §1332(a)(1).

9. Venue is proper in the United States District Court for the Western District of Missouri under 28 U.S.C. § 1391(a) because a substantial amount of the events and occurrences

giving rise to this action occurred in this District in that Rolfe is a citizen of Missouri, the Policy upon which this action is premised was entered into in Missouri, and Missouri law applies to the interpretation of the Policy and the parties' rights and duties thereunder.

10. This Court "may declare the rights and other legal relations of any interested parties seeking such declaration" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) with respect to the policy of insurance issued by State Farm and all above referenced parties are interested parties with respect to the termination of rights pursuant to the insurance policy issued by State Farm.

## GENERAL ALLEGATIONS

11. State Farm brings this action seeking the interpretation of insurance policies described below and a declaration of its rights and obligations thereunder.

12. An actual justiciable controversy exists between State Farm and Defendants, and litigation as to this controversy is imminent and inevitable. The resolution of the matters raised in this declaratory judgment action will dispose of the issues and disputes between the parties.

13. All necessary and proper parties are before the Court for the matters in controversy.

14. State Farm has no other adequate remedy at law.

### Factual Allegations and Allegations of the Underlying Lawsuit

15. On August 28, 2020, Fund 5 and Fund 7 filed the Underlying Lawsuit against Rolfe asserting claims for injunctive relief, accounting and disgorgement, and actual, compensatory, and exemplary damages based on Rolfe's alleged actions during the course of a business relationship between Rolfe and Ryan and Jamie Smith ("Smiths"), the members of Fund 5 and Fund 7 (the "Funds"). Ex. A, Complaint in Underlying Lawsuit, *generally*. A true and accurate copy of the

Complaint filed in the Underlying Lawsuit is attached hereto and incorporated by reference as **Exhibit A**.

16. In the Underlying Lawsuit, the Funds assert claims for violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq., Tortious Interference with Contractual Relationships, Tortious Interference with Business Relationships, Defamation, and Injurious Falsehood or Trade Libel. Ex. A, *generally*.

17. In the Underlying Lawsuit, the Funds allege that Rolfe participates in the ownership and management of multiple properties, real estate investment funds, and portfolios, co-owns a mobile home park business, and works as a speaker and instructor in the mobile home park industry nationally. Ex. A, ¶ 8.

18. The Underlying Lawsuit alleges Rolfe is actively engaged in a concerted and expansive campaign to tortiously interfere with the Funds by making false and defamatory statements to investors about the Funds with the purpose of diverting investors, resources, and business away from the Funds to his own ventures, to derive financial benefit for himself at the detriment of the Funds, and to deprive the Funds of contractual or reasonably anticipated financial benefit from investor relationships and business operations. Ex. A, ¶¶ 10-11.

19. Further, the Underlying Lawsuit alleges that Rolfe was engaged in various business dealings with the Smiths over several years, and during the course of their business relationship developed "an intense animosity towards the Smiths," and "began to view the Smith's as a competitive threat." Ex. A, ¶¶ 14-23, 24-25.

20. Moreover, it alleges that Rolfe had been planning to undermine the Smith's business ventures for years and was using his public relationship with the Smiths to grow his own

real estate empire with the intent to undermine the Smith's reputation and eliminate them as competitors. Ex. A, ¶¶ 26-28.

21. The Underlying Lawsuit further alleges that Rolfe acted to constrain investment returns in the jointly operated businesses by unnecessarily increasing expenditures without justification and reducing the overall returns to the investors in the businesses. Since 2018, a series of lawsuits have been filed to address many of these matters. Ex. A, ¶¶ 29-31.

22. According to the allegations of the Underlying Lawsuit, Rolfe received an adverse decision regarding one of his businesses in September 2018, which was upheld in March 2020, and when investors learned of the adverse decision, a significant number of them requested to be redeemed out of the business fund, causing Rolfe to retaliate against the Smiths and the Funds. Ex. A, ¶¶ 33-34.

23. The Funds allege that, as a result of an increasing number of losses related to Rolfe's businesses, Rolfe has tortiously interfered with, defamed, and otherwise directly harmed the Funds, which are the only two funds of the Smiths in which Rolfe is not involved. Ex. A, ¶35.

24. The Underlying Complaint claims that Rolfe has used investor contact information to contact various Fund investors, to defame and lie about the Smiths and the Funds, and to induce the investors into requesting redemption of their investments from the Funds. Ex. A, ¶¶ 36-53.

25. Among the statements alleged made by Rolfe, are allegations that the Smiths are "crooks," "con-men," and "thieves," that the Smiths stole Rolfe's trade secrets and investors, that the Funds are going bankrupt and the investors will lose their investments if they remain invested, and that the Fund's information is "fraudulent" and "misleading." Ex. A, ¶¶ 54-60.

26. Under Count I for violations of the Florida Deceptive and Unfair Practices Act, the Funds allege that Rolfe has used false and misleading descriptions and representatives of fact

concerning himself, the Smith's, the Funds and other affiliated businesses and individuals, in a manner likely to cause investor confusion or mistake, and with the intent to deceive investors, which will benefit Rolf by inducing them into redeeming their investments from the Funds and placing such investments into competing funds in which Rolfe is involved, or harming the Funds for Rolfe's own anti-competitive purposes. Ex. A, ¶¶ 62-64.

27.     Under Count II and Count III for tortious interference with contractual and business relationships, the Funds allege that Rolfe acted with the intent to induce investors to breach their contracts and severe their relationships with the Funds without legal justification. Ex. A, ¶¶ 68-77.

28.     Under Count III and Count IV for defamation, injurious falsehood and trade libel, the Funds allege that Rolfe has made maliciously false and defamatory statements about the Funds and the Funds' businesses to their investors. Ex. A, ¶¶ 78-85.

## The Insurance Policy

29.     State Farm issued a Personal Liability Umbrella Policy of insurance, Policy Number 25-LA-0711-3 (the "Policy"), to Frank Rolfe, for the policy period of February 24, 2020 to February 24, 2021. A certified copy of the Policy is attached hereto and incorporated by reference as **Exhibit B**.

30.     The Policy contains the following relevant provisions:

**PERSONAL LIABILITY UMBRELLA POLICY**

**AGREEMENT**

1.  **We** agree to provide the insurance described in this policy:
    a.  based on **your** payment of premium for the coverages you chose:
    b.  based on **your** compliance with all provisions of this policy; and
    c.  in reliance on the truthfulness of **your** statements on the declarations page and in the application for this policy.

\*\*\*

# DEFINITIONS

**We** define the words and phrases listed below. Defined words and phrases are printed in bold text: and apply throughout the policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases.

2.     **"bodily injury"** means physical injury, sickness or disease to a person, including death resulting therefrom.
   **Bodily Injury** does not include:

   \*\*\*

       d.     **personal Injury**.

3.     **"business"** means a trade, profession or occupation, including farming.

   \*\*\*

6.     **"insured"** means:
       a.     **you** and **your relatives** whose primary residence is **your** household;

   \*\*\*

7.     **"loss"** means:
       a.     an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or
       b.     the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one loss.

8.     **"personal injury "** means injury other than **bodily injury** arising out of one or more of the following offenses:
       a.     false arrest, false imprisonment, wrongful eviction, wrongful detention of a person:
       b.     abuse of process, malicious prosecution:
       c.     libel, slander, defamation of character; or
       d.     invasion of a person's right of private occupancy by physically entering into that person's personal residence.

   \*\*\*

10.     **"property damage"** means physical damage to or destruction of tangible property, including the loss of use of such property. Tangible property does not include computer programs or data or the reconstruction of computer programs or data. Theft or conversion of property by an **insured** is not **property damage**.

   \*\*\*

15. **"you"** and **"your"** mean the person or persons shown as "Named Insured" on the declarations page. If a named insured shown on the declarations page is a human being then **you** and **your** includes the spouse of the first person listed as a named insured if the spouse resides primarily with that named insured.

16. **"we"**, **"us"** and **"our"** mean the Company shown on the declarations page

*****
## COVERAGE

**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most **we** will pay for such **loss** is the Coverage L Limit of Liability, as shown on the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

**Defense**

If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, we will provide a defense to the **insured** at **our** expense by counsel of **our** choice when the basis for the suit is a **loss** that is not covered by any other insurance policy but is covered by this policy. **We** have no duty to defend any claim or suit after **we** tender, deposit in court, or pay the amount due under this policy.

*****
## EXCLUSIONS

There is no coverage under this policy for any:

***

2.     **loss** arising out of any **insured** providing or failing to provide a professional service;

***

4.     **loss** arising out of an **insured's** act or omission as a member of a corporation's board of directors.

***

6.     **loss** arising out of any **insured's business property** or **business** pursuits of any **insured**, unless:
       a.    (1)    the **loss** does not involve any land motor vehicle or watercraft; and

  (2) **required underlying insurance** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page;

 b. the **loss** involves a **private automobile** used for **business** pursuits, and:
  (1) **required underlying Insurance** for **Automobile Liability** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page;
  (2) the **private automobile** is not for hire either for the use of others or for carrying the property of others; and
  (3) the **private automobile** is not used to carry passengers for a charge in connection with any **business** pursuit; or

 c. the **loss** involves a watercraft used for **business** pursuits, and:
  (1) **required underlying insurance** for **Watercraft Liability** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page;
  (2) the watercraft is not for hire either for the use of others or for carrying the property of others; and
  (3) the watercraft is not used to carry passengers for a charge in connection with any **business** pursuit;

\*\*\*

14. **bodily Injury** or **property damage** which is:
 a. either expected or intended by **insured**; or
 b. the result of any willful and malicious act of the **insured**;

\*\*\*

17. **personal Injury** when the **insured** acts with specific intent to cause any harm:

\*\*\*

21. order of restitution issued by a court in a criminal proceeding or equitable action.

\*\*\*\*\*\*\*\*\*\*

### GROUNDS FOR DECLARATORY JUDGMENT

31. No coverage exists under the Policy for any of the allegations contained in the Underlying Lawsuit.

32. For coverage under the Policy's Personal Liability provisions, the language of the Policy requires a "loss" for which the Policy applies.

9

33. The Policy defines "loss" to mean either (1) an "accident" resulting in "bodily injury" or "property damage," or (2) the commission of an offense which first results in a "personal injury" during the Policy's period.

34. The Underlying Lawsuit does not allege any accidental conduct on the part of Rolfe that resulted in "bodily injury" or "property damage."

35. Nor does the Underlying Lawsuit allege Rolfe committed an offense first resulting in a "personal injury" during the Policy's period.

36. Even if the Underlying Lawsuit did allege a "loss" under the Policy, the Policy's Personal Liability provisions exclude coverage for "bodily injury" or "property damage" which is expected or intended by the insured or is the result of any willful and malicious act of the insured. The Policy also excludes coverage for "personal injury" when the insured acts with specific intent to cause any harm.

37. The Complaint in the Underlying Lawsuit contains only allegations of intentional conduct on the part of Rolfe. This conduct falls under the Policy's exclusions of expected, intended, willful and malicious injury and the exclusion for acts made with specific intent to cause harm.

38. The Policy's Personal Liability provisions further exclude coverage for "loss" arising out any insured providing or failing to provide a professional service and "loss arising out of any insured's business pursuits.

39. The Complaint in the Underlying Lawsuit contains allegations that all of Rolfe's alleged conduct and the Funds' alleged injury was the result of Rolfe's professional services and in furtherance of his business pursuits. This conduct falls under the Policy's exclusions for professional services and business pursuits.

10

40. The Policy's Personal Liability provisions also exclude coverage for any order of restitution in an equitable action.

41. In the Underlying Lawsuit, the Funds seek injunctive relief and an accounting and disgorgement of proceeds Rolfe obtained from the alleged diversion of investors and business from the Funds to his own businesses. To the extent the claims in the Underlying Lawsuit seek this relief, it falls under the Policy's exclusions for restitution in equitable actions.

42. In the Underlying Lawsuit, the Funds seek punitive or exemplary damages. To the extent the claims in the Underlying Lawsuit seek this relief, coverage is not provided for under the terms of the Policy.

WHEREFORE, Plaintiff State Farm Fire and Casualty Company prays that this Court declare the rights of the parties under the aforementioned Policy of insurance and enter judgment finding and declaring:

a. That the provisions of the Policy provide no coverage whatsoever for the Underlying Lawsuit;

b. That State Farm has no duty to defend Defendant Frank Rolfe in the Underlying Lawsuit;

c. That State Farm has no duty to indemnify Defendant Frank Rolfe for any portion of any expense or liability he has incurred or may incur in the Underlying Lawsuit or any future settlement, judgment, or civil penalties that may be entered against Defendant Frank Rolfe in the Underlying Lawsuit or any other action arising out of the business relationships and dealings described in the Complaint in the Underlying Lawsuit;

d. That State Farm is entitled to its costs, including attorney fees; and

e.        That State Farm is entitled to any such further relief this Court deems just and proper under the circumstances.

           Respectfully submitted,

           **KNIGHT NICASTRO MACKAY**

           */s/ Patrick A. Bousquet*
Patrick A. Bousquet,     #57729MO
Kathleen A. McCarthy,     #69218MO
319 N. 4th Street, Suite 300
St. Louis, MO 63102
Telephone: (314) 549-8805
Facsimile: (816) 396-6233
bousquet@knightnicastro.com
mccarthy@knightnicastro.com
**ATTORNEYS FOR PLAINTIFF**